# Emerson *v.* Heard.

*Petition by Administrator to have Decree on Final Settlement amended nunc pro tunc.*

1. *Confederate money, received and used by administrator; decree on settlement.*—On final settlement of an administrator's accounts in 1867, the account-current showing "total amount of debits, $3,155," and credits claimed amounting to $910.34, among which was an item for "Confederate money on hand, $552 44;" and the decree thereupon ascertaining and adjudging that a balance, $2,244.66, remained in his hands, "subject to future charges, and for distribution among those entitled;" this is not a judicial ascertainment of the fact that the balance was in Confederate money, but rather, on the contrary, that he had used the Confederate currency which he had received; and while he may have been entitled to a reduction of the amount into its value at par, in currency at that time, which was not claimed, the decree is, in effect, for the amount specified in money.

2. *Amendment of decree nunc pro tunc.*—Such a decree, if erroneous, may be corrected on appeal; but it can not be amended, *nunc pro tunc*, so as to show that the balance in the administrator's hands was payable in Confederate money.

APPEAL from the Probate Court of Pike.
Heard before the Hon. W. J. HILLARD.

The appellee, A. S. Heard, filed a petition to have the decree on final settlement of his administration of the estate of John Emerson, deceased, amended *nunc pro tunc.* A decree was rendered in the court below granting the petition. The appellant, Alice Emerson, was a daughter of said John Emerson, and a distributee of said estate. The opinion states the material facts.

W. S. ROBERTS, for appellant.

J. D. GARDNER, *contra.*

STONE, C. J.—On July 8, 1867, A. S. Heard, the administrator, came to a final settlement of the estate of John

Emerson, deceased, and there was decreed to Alice Emerson, infant grand-daughter of intestate, and one of the distributees, the sum of sixty-four 13-100 dollars. No objection is raised to the form of proceedings on final settlement. On August 26, 1886—nineteen years afterwards—motion was made in the Probate Court, based on petition filed by the administrator, to have said decree amended *nunc pro tunc*, so as to make it express that it was payable in Confederate money. Notice was given, a contest had, and the motion was granted ; and the judgment was so altered as to make it payable in Confederate money.

Several reasons are urged why we should reverse the judgment *nunc pro tunc*, and among them the length of time which was allowed to elapse before the motion was made. We place our decision on a single ground.

The testimony on which the Probate Court acted in amending or altering the decree, is set out in the bill of exceptions. It is as follows :

In the account current, on which the settlement was made in 1867, after specifying the items of debit, the footing is stated thus :

" Total amounts of debits (Confederate) $3155.00."

Against this are various items of credit claimed, amount $357.90.

And the following " Confederate money on hand, $552.44," $910.34.

" Balance due (in Confederate money) $2244.66."

This sum was then divided among, and decreed to the various distributees, in accordance with their several interests. In the final decree is the following language : " Whereupon it is shown by sufficient proof that said administrator has received of the assets of said estate the sum of three thousand one hundred and fifty-five dollars in Confederate money, and that he has justly expended in and about the costs and charges necessary and incident to said administration, and in the payment of the just debts of the deceased, the sum of nine hundred and ten 34-100 dollars, leaving a balance of two thousand two hundred and forty-four 66-100 dollars, subject to future charges and for distribution among those entitled. And said account appearing to be full and correct, it is considered and decreed," etc.

This evidence does not prove that the balance—$2244.66—found in the hands of the administrator, had perished in his hands. It proves the contrary; for he claimed and obtained a credit in his settlement of $552.44, "Confederate money on hand." He claimed no more, and should have been allowed no greater claim on that account. The bal-

ance—$2244.66—he must have used. For that, he was not entitled to a credit outright. The most he could have claimed, was, that it should be scaled down to its value in par money at the time he used it, and himself held to account accordingly. This would have operated a reduction of the sum in his hands for distribution—nothing more. The settlement was made in 1867—long after Confederate money had ceased to have any value. A decree could not be then rendered to pay in Confederate currency, for it did not exist as a currency. The decree should have been for money, or for nothing, dependent on the inquiry, did the administrator use the money while it had a value, or did it perish on his hands? He did use it, and thereby fastened on himself a liability to account, at least for its value. The decree of 1867 was a money decree aganst the administrator. The amended, or new decree in effect discharged him from all liability. This was not the correction of a clerical error, making the record express truly what was shown to have been the court's ruling. It was an alteration of the ruling itself, making the decree substantially different from the one the court rendered. While such error, if committed, may be corrected on appeal, it can not be done on a motion to amend *nunc pro tunc.—Whorley v. M. & C. R. R. Co.*, 72 Ala. 20; *Ex parte Robinson*, *ib.* 389; see on subject of amendments *nunc pro tunc, Sartor v. Br. Bank Montgomery*, 29 Ala. 353; *Ford v. Tinchant*, 49 Ala. 567; *Boardman v. Parish*, 56 Ala. 54; *Stoutz v. Rouse*, 75 Ala. 431; *Nabers v. Meredith*, 67 Ala. 333.

The decree of the Probate Court is reversed, and a decree here rendered, overruling the motion to amend *nunc pro tunc*, and dismissing the petition at the cost of Heard, the petitioner.

Reversed and rendered.